IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                        3:04CR9/LAC
                                           3:05CV193/LAC/MD


DOMINGO GONZALEZ

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 38).  The government has filed a response (doc. 46) and the defendant has filed a reply  (doc. 50).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  On April 13, 2006, the court held an evidentiary hearing on the single issue of whether counsel was ineffective for his failure to file an appeal.


## I.  BACKGROUND

Defendant was charged in a superseding indictment with conspiracy to possess with intent to distribute five kilograms or more of cocaine, and use and carrying of a firearm, and possession of said firearm, during and in relation to a drug trafficking offense.  Defendant was represented by Christopher Saxer,[1] who was appointed to represent him on March 12, 2004. (Doc. 17).  Defendant entered into a

---

[1]Mr. Saxer is now deceased.

plea and cooperation agreement with the government on March 9, 2004.  (Doc. 20).
The plea and cooperation tracked count one of the indictment, but with respect to
count two only mentioned "possession" of a firearm in connection with a drug
trafficking crime, and not "use and carry" of the firearm.  The AUSA's description of
the charges at defendant's rearraignment likewise mentioned only possession.
(Doc. 35 at 8-9).  The plea proceeding was unremarkable, although due to the
defendant's difficulties reading the English language, the court asked counsel to
specifically verify that he had read the plea agreement to his client.  (Doc. 35 at 14-
15).

The PSR attributed approximately 30 kilograms of cocaine to the defendant,
yielding a base offense level of 34.  His offense level was increased by two levels
pursuant to § 3B1.1(c) of the Sentencing Guidelines due to his role as an organizer,
leader, manager or supervisor, and the probation officer did not allow any
adjustment under §3E1.1 for acceptance of responsibility.  With a criminal history
category of I, the applicable guidelines range would have been 188 to 235 months.

At sentencing, counsel's only unresolved objection pertained to the
defendant's role in the offense.  Counsel argued that his client was more of a
distributor than a leader or supervisor, and the court sustained the objection. (Doc.
38, exh. D at 15).  This, coupled with a two level adjustment for acceptance of
responsibility, reduced the applicable guidelines range for count 1 to 121 to 151
months.  Defendant was sentenced at the high end of that range to a term of 151
months imprisonment on count 1, and a consecutive 60 month term of imprisonment
on count 2.  (Doc. 38, exh. D at 17). The court found that while defendant's
involvement in the conspiracy did not warrant a role adjustment, it did warrant a
sentence at the high end of the applicable guidelines range.  Defendant did not
appeal, although he now states that both he and his family members requested that
counsel file an appeal.  (Doc. 38, exh. F & G).

In the present motion, defendant claims that counsel was constitutionally ineffective for several reasons, and that his plea and sentence were illegal based on the lack of clarity about his plea to the firearm charges.

## II. LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice.").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did take." *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003). (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).

      With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  *Id.*

      To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.  *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

## A.  INEFFECTIVE ASSISTANCE OF COUNSEL

### 1.  Discovery review and failure to challenge firearm charges

Defendant first contends that counsel did not review all discovery materials with him before encouraging him to plead guilty.  He also complains that counsel never filed any pre-trial motions, specifically that he did not challenge the firearm charge or the seizure of the weapon.

Defendant complains that he only received and reviewed "some" of the discovery documents, and that he did not understand what he saw.  He contends that he only saw the witness statements of cooperating witness Denise Winkler.  He maintains that Winkler was actually trying to protect her boyfriend, who was the actual source of supply, and instead named Gonzalez as her supplier.  He also states that there were several audiotapes and a videotape provided to the defense in discovery, but that he never saw or listened to those tapes.  Defendant does not explain why counsel's failure to review these items with him was deficient, and how it would have altered the outcome of the proceedings in any way.  He does not state that he would have proceeded to trial had he reviewed the items, or anything else.

Defendant next maintains that counsel should have challenged the seizure of the unloaded firearm from the glove compartment of the rental car that he was driving.  He concedes in his motion that the arrest was pursuant to a warrant, but

attempts to fault counsel for his failure to challenge the search and seizure conducted at the time of his arrest.  He provides no factual or legal basis for such a challenge.  The law is clear that when an occupant of an automobile is the subject of a lawful arrest, the Fourth Amendment permits the arresting officers to contemporaneously conduct a warrantless search not only of the occupant himself, but also of the passenger compartment of the automobile, including the glove compartment.  *United States v. Gonzalez*, 71 F.3d 819, 825-26 (11th Cir. 1996) (citations omitted).  Thus, a challenge to the search of the glove compartment based on the facts as presented by the defendant would have certainly failed.  Counsel is not ineffective for failing to preserve or argue a meritless claim.  *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

Defendant next argues that his conviction under 18 U.S.C. § 924(c) was unsupported because the cocaine seized incident to his arrest was in the trunk of the car and the gun was in the glove box.  He notes that the mere presence of a weapon in a location where drugs are found does not, per se, prove that the defendant used the firearm in connection with the drug trafficking crime.  See *United States v. Wilson*, 183 F.3d 1291, 1295 (11th Cir. 1999).  Because of this, he claims that counsel should have "challenged" this charge. The basis for such a challenge is

unclear.  Defendant admitted at rearraignment that the facts as presented by the government were true and correct, including the fact that the weapon was possessed "in furtherance of his delivery of at least two kilograms of powder cocaine."  (Doc. 38, exh. D at 10).  Presumably, in order to challenge the charge, defendant would have had to proceed to trial on all charges against him.  There is no evidence that he would have been successful in defeating the gun charge.  In his affidavit, defendant does not address his possession of the firearm except to say it was not stolen, was not loaded at the time of his arrest, and "had never been fired." (Doc. 50, defendant's affidavit at 2).  He does not deny that the gun was possessed in furtherance of his delivery of cocaine.   In light of defendant's admissions of his involvement in the conspiracy and with respect to the gun, and the evidence the government had against him, there does not appear to have been any benefit of his going to trial.  And, defendant never maintains in the instant motion that the weapon in question was not associated with the crime or that the government could not have proven this, only that counsel "should have challenged it."  Thus, he has failed to establish that counsel was constitutionally ineffective.

    2.    **Illegal Plea**

        Defendant next contends that counsel was ineffective because counsel "forced" him to enter into the plea agreement without fully informing him of the evidence against him and without investigating the case.

        An allegation of a coerced plea, supported by a factual allegation, can support a §2255 motion.  *See, Fontaine v. United States*, 411 U.S. 213, 214-15, 93 S.Ct. 1461, 1462-63, 36 L.Ed.2d 169 (1973); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).  However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d

1545, 1550 (11ᵗʰ Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of verity.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*.*  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11ᵗʰ Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11ᵗʰ Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5ᵗʰ Cir. 1981) (citing  *United States v. Sanderson*, 595 F.2d 1021 (5ᵗʰ  Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8ᵗʰ Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7ᵗʰ  Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9ᵗʰ  Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4ᵗʰ Cir. 1991).  "[i]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."  *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11ᵗʰ Cir. 1986).

In this case, the rearraignment was not extraordinary.  The court advised the defendant at the beginning of the proceeding that before it could accept the plea, it must determine that the guilty plea was freely and voluntarily made and that there were sufficient facts to support it.  (Doc. 35 at 3).  Defendant was placed under oath to answer questions.  He indicated that he understood English but that he did not read or write it so well.  (Doc. 35 at 5).  The court informed him of his rights with respect to a trial, and verified that defendant had discussed these rights with counsel, asked the government to recite the facts it could prove if the case were to go to trial, including the fact that defendant possessed the handgun in furtherance of his delivery of cocaine, and defendant affirmed that the facts as set forth by the government were true and correct. (Doc. 35 at 6-11).  Defendant was advised of the potential penalties, which were already set forth in the plea agreement, and the fact that his sentence could not be predicted.  (Doc. 35 at 11-13).  Defendant and counsel both attested to the court that counsel had gone over the plea agreement, and

defendant said that the written document contained all the promises that had been made to him, acknowledged that it afforded him the opportunity to cooperate, and stated that he had not been threatened or forced or pressured or intimated in any way to enter the plea. (doc. 35 at 14-16). He stated that he had had sufficient time to discuss his case with counsel, that he had told counsel everything he knew about the facts of the case, and that he was satisfied with counsel and the representation that had been provided. (Doc. 35 at 16-17). The court accepted the guilty pleas after finding that defendant's decision to enter the guilty plea was freely, voluntarily and understandably made with the advice and counsel of a competent attorney with whom the defendant was well pleased. (Doc. 35 at 18). Defendant's belated challenge to the voluntariness of the plea does not entitle him to relief.

Defendant next contends that counsel failed to investigate the case. He does not explain what counsel should or could have done differently that would have changed the outcome of the proceedings against him. He does not suggest a plausible defense to the charges against him that counsel might have discovered had he investigated, or how such investigation would have changed the outcome of the proceedings. Although he makes reference in a different part of the motion to his belief that Denise Winkler, one of the government witnesses, was protecting her unnamed boyfriend, he neither identifies the boyfriend by name nor sets forth how any "investigation" of this person would have inured to his benefit. Furthermore, based on defendant's admission of involvement in the charged offense, any information provided by the unnamed boyfriend would have gone to the degree, rather than the fact of his culpability. And, because defendant admitted during debriefing that he was involved with 30 kilograms of cocaine, (PSR ¶ 144), the degree of his culpability was accurately reflected in the PSR.[2] In the affidavit filed

_____

[2]Defendant now claims in his affidavit that he told counsel that he was not responsible for the 30 kilograms of cocaine that the government was attributing to him and asked counsel to challenge that figure. For defendant's sake, the court reads the affidavit to state that the defendant made this representation to counsel before he agreed to fully cooperate with the government, rather than as a potentially perjured statement inconsistent with previous sworn statements made during debriefing. See PSR ¶ 144.

in conjunction with his reply, defendant states that he asked counsel to "investigate" Denise Winkler.   Again, it is not clear what benefit would have inured to the defendant through such investigation.

Defense counsel states in his affidavit that he requested and received discovery from the government, reviewed this evidence personally, then met with the defendant at the Santa Rosa County Jail to review the evidence with his client.  He states that after discussions withe the defendant regarding the evidence the government proposed to use against him, federal conspiracy law and the sentencing guidelines, the defendant decided that it was in his best interest to plead guilty.  This appears to have been a sound decision, and without knowing what additional investigation defendant contends counsel should have undertaken or what evidence would have been uncovered, the court cannot say that counsel's performance was unreasonable or constitutionally deficient.

### 3.    Inadequate representation at sentencing

Defendant next contends that counsel was ineffective because he filed no objection to the statutory, consecutive sentence "enhancement" for the firearm charge.  This argument is frivolous, as the sentence is statutorily mandated by title 18 U.S.C. § 924(c).  In addition, the sentence he faced on this count was explicitly set forth in the plea and cooperation agreement.  (Doc. 20 at 2)

He also claims counsel failed to address the refusal of the court to allow the additional reduction for acceptance of responsibility.  Pursuant to § 3E1.1(a), of the Sentencing Guidelines, if a defendant clearly demonstrates acceptance of responsibility for his offense, the offense level may be decreased by two levels.  The government conceded after the preparation of the PSR that defendant was entitled to this reduction due to the information he provided in later debriefings. (PSR ¶ 145). However, due to the defendant's delay in telling the truth the government did not agree that the additional one point reduction was justified.  (*Id.*).  As recognized by

defense counsel at sentencing, the additional one point reduction applies only upon motion of the government.  (Doc. 38, exh. D at 2).  No such motion was filed, so such an argument would have been futile.  *Brownlee; supra; Meeks, supra.*

Next defendant claims counsel should have argued for a sentence reduction based on the defendant's role in the offense.  In fact, defendant's role in the offense was argued at length at sentencing.  The government sought a two level increase for the defendant's alleged leadership role in the offense, and trial counsel argued in opposition that defendant was more of a distributor than a leader or supervisor, such that the increase was not warranted.  (Doc.38, exh. D at 2-3).  After significant argument, the court sustained the objection.  (Doc. 38, exh. D at 3-15).  However, it found that the government's arguments had some merit and sentenced the defendant at the high end of the guidelines as a result.  Clearly, based on the court's conclusion after hearing the arguments of counsel a request for a minor role reduction would have failed.  Thus, counsel was not constitutionally ineffective for failing to present such an argument.

Defendant next claims counsel should have argued for leniency, presented witnesses, and  request a downward departure.  He provides no factual basis for an argument for leniency, he does not identify witnesses that should have been called or proffer testimony they would have given and he suggests no legal or factual basis for a downward departure.

Finally, he contends counsel should have argued for a departure based on the disparity of sentences imposed in the case.  There was no legal basis for such an argument as the Eleventh Circuit has held that a sentencing judge may not depart in order to avoid an apparently unjustified disparity between codefendants. *United States v. Quinn,* 123 F.3d 1415, 1425 (11th Cir. 1997) (citing *United States v. Chotas*, 968 F.2d 1193, 1197-98 (11th Cir. 1992)).  Thus, defendant has failed to show that counsel's performance at sentencing was constitutionally inadequate in any respect.

4.    **Failure to File an Appeal**

Defendant argues that counsel was constitutionally ineffective because he failed to file an appeal.  It is beyond cavil that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  *Id.*  However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  *See supra* 1034-1035.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035.  The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2)

that this particular defendant reasonably demonstrated to counsel that
he was interested in appealing.  In making this determination, courts
must take into account all the information counsel knew or should have
known . . . . Although not determinative, a highly relevant factor in this
inquiry will be whether the conviction follows a trial or a guilty plea,
both because a guilty plea reduces the scope of potentially appealable
issues and because such a plea may indicate that the defendant seeks
an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036.

In cases where a defendant has not specifically instructed his counsel to file
a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must
demonstrate a reasonable probability exists that, but for counsel's deficient
performance, he would have timely appealed. *Id.* at 1038, 1040. "Evidence that there
were nonfrivolous grounds for appeal or that the defendant in question promptly
expressed a desire to appeal will often be highly relevant in making this
determination." *Id.* at 1039.

Defendant was represented at the evidentiary hearing by retained counsel
Marisa Mendez, where, through counsel, he declined the opportunity to testify,
instead relying on the affidavit that was filed in support of his reply. (Doc. 50, exh.
A).  In that affidavit, dated November 10, 2005, defendant states that he asked his
family to contact Mr. Saxer so that he would come to see the defendant because he
wanted to appeal his sentence within the ten days the judge had mentioned. (Aff. ¶
23).  Counsel met with the defendant at the Santa Rosa County Jail, and discussed
defendant's desire to appeal his sentence. (Aff. ¶ 25).  Defendant stated that he
wanted to appeal because he "felt that [his] sentence was too harsh, especially in
light of the sentences of others in [his] case," and because he did not get the
additional point for acceptance of responsibility and he was sentenced at the high
end of the guidelines. (Aff. ¶ 25).  Counsel told the defendant that there were no
legal issues to appeal, but defendant maintains that he told counsel that he wanted
to appeal to get a lesser sentence. (Aff. ¶ 26).  Defendant indicates that he contacted

his family to communicate with Mr. Saxer to make sure he filed the notice of appeal, and that family members sent five separate emails requesting that counsel appeal defendant's sentence.  (Aff. ¶ 28).  He further states that after he learned no appeal had been filed, he almost immediately began trying to find an attorney to assist in representing him in a § 2255.  (Aff. ¶ 29).  These assertions, because defendant did not testify, were not subjected to scrutiny under cross-examination.

Defendant filed the affidavits of his common law wife Mildred Ramos, and his sister, Awilda DeJesus along with the initial § 2255 motion.  Neither of them were called as witnesses at the hearing, so, as with the defendant's affidavit, the contents of these affidavits have not been subjected to cross-examination.  Ms. DeJesus states in her affidavit, dated May 23, 2005 that she spoke with counsel the day after defendant's sentencing and told him that the defendant and his family were upset about the sentence he had received, and that they, including the defendant,  wanted to appeal. (doc. 38, exh. F at 2).  Mr. Saxer told her that there was nothing to appeal, and said that he would talk to the defendant.  Ms. DeJesus told him that her brother wanted to appeal his sentence regardless of what counsel thought. She maintains that counsel later told her that he did not appeal because there was nothing to appeal.  (*Id.*).

The affidavit of Mildred Ramos, also dated May 23, 2005 states that after sentencing she did not speak with counsel until she sent him an email about the defendant's sentence, stating that "we should appeal."[3]  (Doc. 38, exh. G at 1).  She indicates that she told counsel that the defendant wanted to appeal, although how she determined this is unclear from the record. Ms. Ramos states that she never heard from counsel and that she later found out he did not file any appeal, and that she and the defendant both were upset about this.  (*Id*. at 2).

---

[3]Although, as discussed below, the record reflects that counsel received an email from Awilda DeJesus, neither is this email mentioned in Ms. DeJesus' affidavit, nor is there an email from Ms. Ramos in the record, suggesting perhaps some confusion between the affiants about the details of how the events transpired.

Due to Mr. Saxer's death during the pendency of these proceedings, the government also presented no witnesses at the evidentiary hearing, and relied only on evidence already in the court file.   The record reflects that defendant was sentenced on May 25, 2004.   On May 27, 2004, counsel received an email and facsimile from defendant's sister, Awilda DeJesus, indicating that on May 26, 2004, defendant had advised her that he wished to appeal.  (Doc. 46, exh. A).   Counsel responded on May 28th that he had visited the defendant the previous day and had not received Ms. DeJesus' email and fax until that morning.  (*Id.*)  He stated that in meeting with the defendant, he went over any questions defendant had and defendant had relayed that his family wanted him to appeal.   Counsel said that when he inquired what the family wanted to appeal, defendant did not know, just that they wanted him to appeal.   Counsel explained that the sentence defendant received was legal and that he did not think there was any legal ground to appeal the sentence. The only matter that in counsel's opinion might have been a viable appellate issue was the increase for defendant's role in the offense.   That issue had been successfully challenged by counsel at sentencing, such that there were no remaining issues for appeal.  Counsel stated "After explaining that to Domingo, he was satisfied and does not wish to appeal his sentence."  (*Id.*).  He noted in his response that an appeal would have to be filed by June 4, 2004 and indicated his willingness to speak to defendant's sister about any issues or concerns surrounding an appeal.   He concluded by saying "[a]t this point, after speaking directly with Domingo about the issue of an appeal, and his consent not to appeal his sentence, I do not intend on filing an appeal.   Should you have any other message from Domingo to the contrary, please let me know."   (*Id.*).   A copy of this email correspondence was also sent via facsimile on June 1, 2004, still within the deadline for filing the notice of appeal.

Counsel's affidavit reflects that he had been practicing criminal law for 19 years and that he has considerable criminal law and jury trial experience.  (Doc. 46,

exh. C at 1). **After working as an Assistant State Attorney in the First Judicial Circuit of Florida, he was in private practice for 15 years, focusing his practice primarily on criminal defense.[4]** (*Id.*). **Relevant to the issue of counsel's failure to file an appeal, counsel states that he met with the defendant a day or two after sentencing to ensure the defendant understood the sentencing hearing, the sentence itself, and to answer any questions defendant may have had.  At that time the defendant told him that his family wanted him ot appeal.  Counsel asked defendant what his family wanted him to appeal, and whether he himself wished to appeal.  Defendant responded that he did not know what his family wanted him to appeal, just that they wanted him to do so. Counsel states that he explained that he did not believe there to be any legal issues to appeal, since they had prevailed at sentencing on the claim regarding defendant's role in the offense, but he told defendant that he was entitled to file a notice of appeal, and that if defendant wished him to do so, he would.  After their discussion, defendant stated that he did not wish to appeal his case. (Doc. 46 exh. C at 7-8).**

**Counsel mentions in his affidavit the involvement defendant's sisters had in this case, that they were in "constant" contact with him during the months the defendant's case was pending and continually offering their interpretation as to what they believed. (Doc. 46, exh. C at 8).  Counsel states that defendant's sisters wanted to appeal, but that defendant "stated clearly to affiant that defendant understood the facts of the case, his sentence and that defendant did not express any desire to appeal.  To the contrary, defendant stated to affiant that defendant did not wish to appeal." (*Id.*).  Counsel recalls that when he tried to console defendant as to the**

---

[4]When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger.  *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000); citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (stating that "strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel" and that "[t]he more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense" is reasonable); see also *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 3118, 97 L.Ed.2d 638 (1987) (reciting counsel's impressive credentials in opinion finding that counsel rendered effective assistance).

length of his sentence, stating he wished he could have gotten the court to give defendant less time than the high end of the guidelines range, defendant stated in response. "You did good.  You got me twelve and a half years.  I got myself the other five."  (*Id.*)

> In the concluding paragraph of his affidavit, counsel states:
>
> Affiant fully discussed defendant's right to appeal and all issues affiant felt were legally capable of appeal.  Affiant also informed defendant that affiant would file a notice of appeal if defendant so desired.  Defendant's family wished for defendant to appeal, not defendant.  Affiant cannot be bound by a client's family's desires, but should inform the client and follow the client's desires.  Defendant did not desire to file an appeal, nor did he ask affiant to file an appeal.  Defendant plainly stated that defendant did not wish to file an appeal just that his family wished for him to appeal.  Affiant never heard from defendant after defendant informed affiant of his decision not to appeal.  Affiant responded to defendant's family's concerns and, likewise, did not receive any further instructions from defendant.

(Doc. 46, exh. C at 8).

This case is most unusual in that even after an evidentiary hearing, the court is in virtually the same position that it was beforehand: it must make a credibility determination based only upon the written record with which it was presented.  Of course the government did not have the opportunity to present additional sworn testimony, but the defendant chose not to do so.  Having reviewed the record and considered the arguments made by the parties at the hearing, the court finds that the position of the government, that Mr. Saxer was not asked to file an appeal, is more credible.  As noted above, Mr. Saxer was an experienced attorney, with the majority of his practice in criminal law.  Although the defendant's current counsel is retained, Mr. Saxer was CJA appointed, and therefore defendant's ability to pay would not have been at issue.  Counsel stated in his affidavit that he told the defendant he would have filed an appeal had the defendant asked him to do so, but that defendant had indicated the opposite, that he did not want to appeal.  Filing a notice of appeal, as this court is well aware, is a ministerial function which takes virtually no time or

effort.  Had counsel received indication from defendant that he personally wished to appeal, rather than that this was the wish of his family, counsel could have easily filed the notice of appeal.  And, if he believed that there were no meritorious legal issues to appeal, he could have filed an *Anders*[5] brief.

Post-conviction counsel argued at the hearing that the fact that counsel did not send his client a written letter of confirmation that no appeal would be filed is significant.  However, the court does not have before it any evidence that such would have been counsel's normal and customary practice.  Furthermore, the email/facsimile confirming that counsel would not be filing an appeal unless he heard otherwise, created and sent even before the time had elapsed for filing an appeal is persuasive.

Post-conviction counsel also argued that there may have been some confusion about the issue of an appeal, and that there would be no "prejudice" to the government to let the defendant file a belated appeal.  Whether the government would be "prejudiced" by having to defend a belated appeal, whether by financial burden or otherwise is not the test.  Nor should it be.  The law is clear that a defendant is entitled to a belated appeal if counsel, after consulting with the defendant, has failed to follow the defendant's express instructions with respect to an appeal.  *Flores-Ortega, supra.* The court has rejected the defendant's argument that this is what happened in his case.  Furthermore, even if counsel had utterly failed to consult with the defendant regarding an appeal, the facts of this case favor a determination that counsel was not constitutionally ineffective.  Defendant pleaded guilty pursuant to a negotiated plea agreement, thereby reducing the scope of potentially appealable issues and indicating his desire to end judicial proceedings.  *See Flores-Ortega,* 528 U.S. at 480, 120 S.Ct. at 1036. There are no non-frivolous bases for appeal apparent from the record.  *Id.*  And, defendant's affidavit reflects

---

[5]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

that he and counsel discussed the issue of his potential cooperation with the government, which is generally considered inconsistent with pursuit of an appeal.

For all of the foregoing reasons, the court finds that counsel was not constitutionally ineffective for his failure to file an appeal.


## B.  ILLEGAL PLEA AND SENTENCE TO FIREARM CHARGE

Defendant appears to contend in this claim that there was no factual basis for his plea on count 2 of the indictment.  This issue could have been raised on direct appeal.  A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998);   *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  In light of the defendant's contention that counsel failed to file an appeal, the court will briefly consider the merits of this claim.

Count 2 of the superseding indictment charged that defendant "did knowingly use and carry a firearm, and possessed a firearm in furtherance of [a drug trafficking offense]."
(Doc. 13 at 2).  Defendant seems to argue that the government did not prove "use" of the firearm.  However, this is not necessary.  "Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may plead the offense conjunctively and satisfy its burden of proof by any of the means."  *United States v. Cornillie*, 92 F.3d 1108, 1110 (11th Cir. 1996) (citation omitted); *United States v. Still*, 102 F.3d 118, 124, (5th Cir. 1996) (applying same rationale in context of § 924(c) conviction by guilty plea) (citations omitted);

*see also United States v. Dick*ey, 102 F.3d 157, 164, n. 8 (5th Cir. 1996) (citation omitted, applying same rationale to indictment for violation of 924(c), which was pleaded in the conjunctive while the statute and jury charge were in the disjunctive). That is, even if the defendant is charged with using *and* carrying a firearm, or in this case using *and* carrying *and* possessing, the government need only prove one means of violating the statute to sustain a conviction. *Still*, 102 F.3d at 124.

Defendant's plea agreement described the charge as "possession of a firearm in connection with a drug trafficking crime." (Doc. 20 at 2, 6).          As noted above, the facts as set forth by the government at rearraignment paralleled this language by stating that the defendant possessed the handgun "in furtherance of his delivery of" cocaine. (Doc. 38, exh. D at 10). Defendant admitted that these facts were true and correct. He has not made any argument suggesting that his possession of the firearm was completely unrelated to his transporting the two kilograms of cocaine, and it is highly unlikely that the possession was coincidental. *See United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir. 2002); *United States v. Crosky*, 28 F.Supp.2d 1340 (M.D. Al. 1998). Therefore, the facts as presented by the government were sufficient to uphold defendant's plea and conviction to count 2, and he is not entitled to relief.


Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 38) be DENIED.


At Pensacola, Florida, this 21st day of April, 2006.



/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**